Allen *v.* Rundle.

BARNABAS ALLEN AND ANOTHER *vs.* SAMUEL H. RUNDLE AND OTHERS.

Where the collectibility of a note is guaranteed it is necessary for the holder to use due diligence for its collection from the maker when it falls due. But if sufficient personal property of the maker can not be found, he is not bound to attach real estate.

ASSUMPSIT on the guarantee of the collectibility of a note; brought to the Superior Court; being the same case that was before this court at a former term. See page 9, *ante*, where the facts of the case are fully stated. Tried to the jury on a general denial before *Stoddard, J.* Verdict for the defendants, and appeal by the plaintiffs' on the ground of error in the charge. The case is fully stated in the opinion.

*H. S. Sanford* and *E. W. Seymour*, for the appellants.

*L. D. Brewster* and *S. Tweedy*, for the appellees.

CARPENTER, J.   This action is brought on a guaranty of a note signed by Charles Benedict, as follows :—" For value received, we jointly and severally guarantee the within note good and collectible until paid." It was admitted on the trial that the holders of the note instituted no suit against the maker before suing the guarantors. The plaintiffs claimed that they were not required to institute such a suit for the reason that the maker was insolvent. It was admitted that there was not personal property subject to attachment sufficient to secure the note. It was also admitted that there was real estate, to the amount of about $25,000, which might have been attached. The maker had conveyed it to his wife and it was claimed that the conveyance was fraudulent, but that is not now important. The plaintiffs claimed that they were not bound to attach real estate, and, as there was not sufficient personal property to pay the demand, that they were not required to sue out a writ of attachment. The defendants claimed that it was the plaintiffs' duty before bringing this suit to pray out a writ of attachment against the maker and deliver it to an officer for service, and that, having failed to do so, they could not recover. They also claimed that only absolute insolvency on the part of Benedict would excuse the plaintiffs for not suing him before suing the guarantors; that it must be an utter insolvency, that is, an inability to pay his debts from any of his property real or personal.

The parties asked the court to charge the jury according to their respective claims. The court refused to charge as requested by the plaintiffs, and did charge as requested by the defendants. The plaintiffs appealed. The important question in the case is, whether the court in its charge to the jury gave them the law correctly.

The parties agree that the plaintiffs were bound to use due diligence to collect the note of the maker, unless such diligence was waived. There was a question of waiver, but that is not now material. The real question is, to state it in another form, what was due diligence under the circumstances?

Prior to the abolition of imprisonment for debt the law was well settled that if the maker had property, real or personal, the holder was bound to sue out a writ of attachment, to attach personal property if sufficient could be found to secure the demand, and, if not, to attach the body; but he was not required to attach real estate. If the maker had no property at all, the holder was not required to sue out a writ. The object of attaching the body was to coerce payment. The theory of the law was, that if the maker had property he would pay the debt rather than suffer imprisonment. If he had no property he could not pay the debt, and, if imprisoned, could be discharged on taking the poor debtor's oath, and therefore the attachment of the body would be futile.

Now the defendants claim that the exemption of the body does not change the rule requiring that the maker should be destitute of property in order to excuse the praying out of a writ, that the holder is still bound to procure a writ, place it in the hands of an officer for service, and perhaps serve it by attaching real estate or otherwise; that to that extent the law gives him the means of coercion, and he is bound to resort to it.

On the other hand the plaintiffs claim that the only object in attaching the body, when the maker had real but no personal property, was to compel him to raise money and pay the debt; that it was not necessary to serve the writ if neither personal property nor the body could be found; that the statute abolishing imprisonment for debt does not require service in any case which was not required before, and that it necessarily excuses the praying out of a writ to attach the body, and dispenses with a writ in all cases except where sufficient personal property can be found.

We have come to the conclusion that the plaintiffs' claim ought to be sustained.

The law never requires a futile act or an idle ceremony. When it is obvious that legal process will be of no avail legal process is not required. That is the principle which lies at the foundation of the rule, that where there is no

property process is dispensed with, for presumptively it will be useless. Inasmuch as the body cannot now be attached, if the maker has not sufficient personal property, the presumption is that legal process will not avail to collect the note in money; for the holder is entitled to that and is not bound to take land or anything else.

But the defendants say that the existence of process in the hands of an officer, when the maker has any property which is liable to be attached, is a species of coercion, and may result in the payment of the money. If the maker is disposed to pay the money, and is able, he will pay it on demand, and will not require a writ to be issued. If he is not disposed to pay it, or is not able, it is apprehended that the moral force of the existence of a writ in the hands of an officer will be very slight, hardly sufficient to justify us in founding a rule of law upon it, especially a rule requiring delay and expense.

It may be said that a writ in the hands of an officer is a threat to attach real estate and make expense for the maker. That may be so to some extent, but the law does not require him to attach real estate and consequently does not require him to threaten to attach it. Any pretense that the holder is about to attach it, unless it is really intended, would be a false one. The law may tolerate feints of that description, but it does not encourage them—much less require them.

It may be claimed that the coercion may be effective if the estate is actually attached, and therefore it is required. That mode of coercion existed under the old law when the body was liable to be attached, and yet it was not required. If it is required now, then the change in the statute changed to that extent the rule of due diligence—a change that was not the natural and logical consequence of the act, and therefore cannot be presumed to have been intended by the legislature. It can hardly be said that the holder is bound to attach real estate but is not bound to pursue the attachment. Such a rule of law would be illogical and anomalous. If the holder attached the body under the old law he was

bound to levy his execution thereon. If he failed to do so, or voluntarily released the body, the guarantor was' discharged. If he attaches sufficient personal property and releases it, the guarantor is discharged. Following the analogy, if he is bound to attach real estate at all he is bound to pursue the attachment; for he cannot know until the last moment that the debtor will not relent and pay the debt. At what point in the proceedings, short of an absolute completion of the levy, is he at liberty to desist? If the levy is actually completed his debt is satisfied and his claim on the guarantor is gone.

It was suggested on the argument that the recent statute authorizing a judgment creditor to file a judgment lien on real estate, thereby acquiring a statutory mortgage, might be regarded as changing the rule of law so as to require the real estate to be attached. But that is not a collection of the debt. It may secure it, but the creditor may be ultimately obliged to take the land. The defendants' contract was, not that the debt could be secured on real estate, but that it could be collected in money.

A new trial is ordered.

In this opinion the other judges concurred.